**BOISE MATTHEWS DONEGAN LLP**
Bridget M. Donegan, OSB No. 103753
805 SW Broadway, Suite 1900
Portland, OR 97205
(503) 228-0487
bridget@boisematthews.com

*Attorneys for Plaintiff Loujain Hathloul Alhathloul*

**FOLEY HOAG LLP**
Christopher E. Hart, MA BBO No. 625031
chart@foleyhoag.com
Anthony D. Mirenda, MA BBO No. 550587
adm@foleyhoag.com
Andrew Loewenstein, MA BBO No. 648074
aloewenstein@foleyhoag.com
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1232

*Attorneys for Plaintiff Loujain Hathloul Alhathloul*

**ELECTRONIC FRONTIER FOUNDATION**
David Greene, CA Bar No. 160107
davidg@eff.org
Sophia Cope, CA Bar No. 233428
sophia@eff.org
815 Eddy Street
San Francisco, CA 94109
(415) 436-9333

*Attorneys for Plaintiff Loujain Hathloul Alhathloul*

**CENTER FOR JUSTICE AND ACCOUNTABILITY**
Daniel McLaughlin, CA Bar No. 315326
dmclaughlin@cja.org
Claret Vargas, MA BBO No. 679565
cvargas@cja.org
Carmen Cheung Ka Man, NY Bar No. 4132882
ccheung@cja.org
268 Bush St. #3432
San Francisco, CA 94104
(415) 544-0444

*Attorneys for Plaintiff Loujain Hathloul Alhathloul*

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| LOUJAIN HATHLOUL ALHATHLOUL, | Civil No. 3:21-cv-01787-IM |
| *Plaintiff*, | |
| v. | |
| | **PLAINTIFF'S MEMORANDUM OF LAW ON PROPOSED DISCOVERY SCHEDULE AND PROPOSED DISCOVERY REQUESTS** |
| DARKMATTER GROUP, MARC BAIER, RYAN ADAMS, and DANIEL GERICKE | |
| *Defendants*. | |

## INTRODUCTION

Pursuant to the Court's Order, ECF 83, Plaintiff Alhathloul submits her proposed discovery requests, *see* Exhibit A, and her proposed jurisdictional discovery schedule addressing the taking of remote depositions, *see* Exhibit B, together with this memorandum of law justifying her requests and proposed schedule.

Alhathloul's discovery requests are well within the eight "categories" of information identified in the Court's Order, ECF 80 (the "Order"), and her discovery requests are properly "limited to information relevant to Defendants' alleged espionage while Plaintiff was in the United States from November 28 to December 2, 2017." ECF 80 at 7. In the vast majority of instances, Plaintiff's discovery requests are narrowed to the "Relevant Period" of November 28 to December 2, 2017 when she traveled to the United States and alleges she was hacked, as contemplated by the Order and defined in Plaintiff's proposed discovery.

With respect to Alhathloul's proposed discovery schedule, which anticipates the taking of remote depositions of the Individual Defendants and a corporate designee of DarkMatter Group, Alhathloul's proposal comports with her rights under the Federal Rules of Civil Procedure. By contrast, Defendants' proposal for depositions by written questions—a mechanism that is "rarely an adequate substitute for oral depositions"—would thwart Alhathloul's most effective means for discovering facts relevant to the Court's ultimate jurisdictional analysis. *Scott v. Chipotle Mexican Grill, Inc.*, 306 F.R.D. 120, 125 (S.D.N.Y. 2015) (internal citations omitted). The various reasons Defendants cite for why remote depositions could be "quite fraught" do not justify insistence on their preference for depositions by a limited set of written questions.

I.   **ALHATHLOUL'S DISCOVERY REQUESTS COMPLY WITH THE COURT'S ORDER GRANTING LIMITED JURISDICTIONAL DISCOVERY**

The Court's Order authorized Plaintiff "to seek discovery" regarding eight "categories of information" bearing on the Court's purposeful direction analysis. ECF 80 at 7-8. Each of Plaintiff's discovery requests is well within these eight categories.

- Requests for Production ("RFPs") 1, 2, 3 and 4 seek information about the computer code used to exfiltrate data from November 28 to December 2, 2017 (the "Relevant Period") when Alhathloul traveled to the United States and alleges she was hacked, consistent with Category 1.

- RFPs 5 and 6 seek information about the System Architecture of the version of Karma in use during the Relevant Period when Alhathloul traveled to the United States and alleges she was hacked, consistent with Category 2.

- RFPs 7, 8 and 10 seek information about the specific commands Defendants would have sent to Alhathloul's device during the Relevant Period, consistent with Category 3.

- RFPs 9, 11 and 14 seek information relevant to Defendants' awareness of Alhathloul's presence in the United States, such as the manner and extent to which they monitored Alhathloul's location, whereabouts and social media, consistent with Category 4.

- RFPs 15 and 16 seek information about the identity of the companies from which Defendants procured anonymization services and proxy servers that were used by Karma during the Relevant Period, consistent with Category 5.

- RFPs 17, 18 and 21 seek information about the exact services Defendants procured, including the contract or agreement into which Defendants entered, for the anonymization services and proxy servers used by Karma during the Relevant Period, consistent with Category 6.

- RFPs 19 and 20 seek information about Defendants' reasons for choosing the particular anonymization services and proxy servers used by the version of Karma during the Relevant Period, consistent with Categories 7 and 8.

While Defendants do not dispute that the Court's Order identified "categories" of information for discovery, they object to all discovery requests that do not merely duplicate verbatim these "categories." Defendants assert two reasons why Alhathloul's discovery requests are not properly limited, each of which lacks merit.

First, Defendants object to Plaintiff's requests on the basis that they are "[n]ot limited to Alhathloul." *See* Defendants' Proposed Discovery Schedule at 3 (Feb. 29, 2024). Although not all of Plaintiff's requests mention Alhathloul specifically, they fall well within the categories provided by the Court because they are "limited to information relevant to Defendants' alleged espionage while Plaintiff was in the United States from November 28 to December 2, 2017." ECF 80 at 7. Plaintiff's requests seek information about how Karma operated during the relevant time period in which she traveled to the United States and alleges she was hacked by Defendants.

Plaintiff's requests are both limited in time period and scope, and seek information pertinent to the Court's jurisdictional inquiry. For example, RFP No. 5 ("The System Architecture of the Relevant Karma System") directly addresses how "Defendants' software allegedly interacted with, and exfiltrated data from, Plaintiff's iPhone while she was in the United States." ECF 80 at 5-6 (identifying key jurisdictional issue). Responsive documents would demonstrate the likely pathway of data between the Relevant Karma System (the version of Karma used from November 28 to December 2, 2017) and Alhathloul's device. But according to Defendants, unless such a document showed the pathways between Karma and Alhathloul's device *specifically*, it is "[n]ot limited to Alhathloul," and therefore not within the "categories" of discovery. Defendants' insistence on limiting Alhathloul's requests to only documents that specifically mention her would exclude pertinent discoverable information, no matter how relevant to Defendants' conduct under a purposeful direction analysis.[1] Moreover, restricting

---

[1] It is likely that many documents responsive to the categories of discovery cannot be categorized by any specific target-individuals. For example, under Category 6, it may be the case that Defendants did not procure, or enter into a contract for, anonymization services and proxy servers specific to Alhathloul or any target, but there may be discoverable information relating to contracts for anonymization services that is relevant to a hack of Alhathloul's device. Limiting

discovery to only documents that mention Alhathloul by name is not necessary in order to put substantial limits on the scope of jurisdictional discovery. That is precisely why Alhathloul's proposed requests seek documents and information about the Relevant Karma System or Relevant Period, which together cover a limited five-day period in 2017.[2]

Second, Defendants object to several of Alhathloul's requests on the basis that they are not limited to "Plaintiff's visit to the US from Nov. 28 to Dec 2 2017." *See* Defendants' Proposed Discovery Schedule at 3 (Feb. 29, 2024). This is plainly not the case for the vast majority of Alhathloul's discovery requests, which seek information about the Relevant Karma System and Relevant Period and are limited to the five-day period of Defendants' alleged espionage against Alhathloul while she was in the United States. *See* RFPs Nos. 2, 4-6, 8, 10, 14, 16-18. With regard to Alhathloul's other requests not limited to this period, the information they seek is relevant to other factors in the Court's jurisdictional analysis, such as Defendants' contracting with U.S.-based third parties and whether Defendants had knowledge of Plaintiff's location in the United States. *See* RFPs Nos. 9, 11-13, 15, 19-21.

## II. ALHATHLOUL SHOULD BE PERMITTED TO TAKE ORAL DEPOSITIONS OF EACH DEFENDANT

Consistent with Fed. R. Civ. P. 30(a)(1)—which authorizes a party in discovery to "by oral questions, depose any person, including a party, without leave of court"—Alhathloul's Proposed Discovery Schedule proposes taking the remote deposition of each Individual

---

discovery to the precise wording of the categories of information in the Order risks precluding Plaintiff from obtaining information that could be highly probative to the jurisdictional analysis.

[2] By focusing her requests on how the hack would have occurred to someone in identical circumstances as Alhathloul, the requests resolve Defendants' prior concern that "under the guise of jurisdictional discovery" Plaintiff is trying "to prove her case on the merits." ECF 79 at 5. By contrast, Defendants' narrow reading of the Court's Order turns merits into a threshold issue, requiring Defendants to concede that they hacked Alhathloul.

PAGE 4 - PLAINTIFF'S MEMORANDUM OF LAW ON PROPOSED DISCOVERY SCHEDULE AND PROPOSED DISCOVERY REQUESTS

Defendant and a corporate designee of DarkMatter Group. Defendants request that Alhathloul be limited to "depositions by written questions pursuant to Fed. R. Civ. P. 31, with no more than ten (10) questions." *See* Defendants' Proposed Discovery Schedule at 3. Defendants' proposal severely and unfairly prejudices Alhathloul's ability to obtain meaningful discovery.

### A. Defendants' Request to Limit Plaintiff to Written Depositions Would Thwart Her Ability to Identify Jurisdictional Facts Relevant to the Court's Analysis.

Written depositions are disfavored and "infrequent[ly] use[d]." *See* 8A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2132 (3d ed. 2014). Courts permit depositions by written questions rarely, and only under exceptional circumstances. *See, e.g.*, *Brennan v. City of Philadelphia*, 388 F. Supp. 3d 516, 523 (E.D. Pa. 2019) (written deposition of Philadelphia Mayor but noting plaintiff's right to file a subsequent motion to compel if he concludes that an oral deposition is still necessary); *FTC v. Nudge, LLC*, 2020 U.S. Dist. LEXIS 218269, *10 (D. Utah 2020) (written deposition of Utah Attorney General limited to twenty questions). Depositions by written questions are "rarely an adequate substitute for oral depositions." *Scott v. Chipotle Mexican Grill, Inc.*, 306 F.R.D. 120, 125 (S.D.N.Y. 2015) (internal citations omitted); *see also Zito v. Leasecomm Corp.*, 233 F.R.D. 395, 397 (S.D.N.Y. 2006) (holding that there is a "presumption in favor of oral depositions"); *R.D. v. Shohola Camp Ground & Resort*, 2019 U.S. Dist. LEXIS 114260, *9 (M.D. Pa. 2019) ("Accordingly, depositions upon written questions are disfavored.") (collecting cases holding the same).

Written depositions are inherently inflexible and limit counsel's ability to ask necessary clarifying questions if the deponent's response is unclear or evasive. 306 F.R.D. at 125; *Amann v. Office of the Utah AG*, 2022 U.S. Dist. LEXIS 87144, *17 (D. Utah 2022); *see also* 1 Federal Civil Procedure Litigation Manual 31.1 (2023) (noting that the "inflexibility of the procedure . . . makes this method of discovery unwieldy" and "allows deponents to carefully rehearse their

PAGE 5 - PLAINTIFF'S MEMORANDUM OF LAW ON PROPOSED DISCOVERY
SCHEDULE AND PROPOSED DISCOVERY REQUESTS

responses to the questions with their attorneys"). These drawbacks will be particularly problematic in the instant matter, where, as the Court observed in its Order, Plaintiff's "allegations raise controverted points" on highly technical matters, such as "how Defendants' alleged exfiltration software interacts with Apple's U.S.-based servers." ECF 80 at 5. Preserving counsel's ability to pose technical questions regarding the categories of discovery *and* follow-up with clarifying questions is essential to assisting the Court with resolving "key jurisdictional facts [that] are controverted at this procedural juncture." ECF 80 at 4; *see* Charles Alan Wright, Discovery, 35 F.R.D. 39, 59 (1963) (recognizing that written depositions are less suitable "for a complicated inquiry, or for a searching interrogation of a hostile or reluctant witness."). Nor would written depositions afford counsel the ability to press unexpected but relevant lines of questioning or fully examine intangible facts relevant to jurisdiction, such as "Defendants' *reasons* for contracting with" U.S.-based third-party businesses, which "could affect this Court's ultimate ruling on jurisdiction." ECF 80 at 6 (emphasis added).

    **B. Defendants' Concerns Do Not Justify Depositions by Written Questions and Cannot Prevent Oral Depositions.**

Defendants' February 29, 2024 email to the Court lists vague concerns regarding issues of "citizenship, sovereignty, nondisclosure agreements, and security clearance," that would make oral depositions "quite fraught." But, as a general matter, seeking protection from an oral deposition requires a specific showing that the deposition will be overly burdensome. *See Barwick v. Behnke*, 2012 U.S. Dist. LEXIS 29971, *6 (D. Colo. 2012) ("Without a stronger showing from Plaintiff, the Court finds that Plaintiff simply does meet his burden of making a specific and documented factual showing that the deposition will be dangerous to his health."); *In re McCorhill Publishing, Inc.*, 91 B.R. 223, 225 (Bankr. S.D.N.Y. 1988) ("A prohibition against the taking of an oral deposition is a very unusual procedure and a party who seeks a

protective order prohibiting such a deposition bears a heavy burden of demonstrating good cause for such an order."). Defendants' concerns do not pose insurmountable obstacles, let alone good cause, to justify Defendants' preferred format for depositions.

First, the location of Defendants overseas in the UAE and Singapore is inconsequential.[3] Depositions of individuals located abroad are expressly contemplated under the Federal Rules. Fed. R. Civ. P. 28(b)(1)(C) ("A deposition may be taken in a foreign country . . . on notice . . . ."). Courts have "repeatedly acknowledged" their authority to compel a party located outside of the United States to be deposed "pursuant to the normal procedures outlined in the federal rules." *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 105 F.R.D. 435, 445 (S.D.N.Y. 1984); *see also Lantheus Med. Imaging, Inc. v. Zurich American Ins. Co.*, 841 F. Supp. 2d 769, 781 (S.D.N.Y. 2012) ("[I]f one party to a lawsuit seeks discovery from another party (even a foreign party), a federal court may exert its authority to compel the receiving party to provide relevant discovery pursuant to the normal procedures outlined in the federal rules . . . regardless of where the information is actually located."); *Thales Avionics Inc. v. Matsushita Avionics Sys. Corp.*, 2006 U.S. Dist. LEXIS 97119, *9-10 (C.D. Cal. 2006) (same).

Second, Defendants' attempts to hide behind generalized references to "sovereignty" or unspecified "national security-related laws" of the UAE are unavailing. While Plaintiff is not aware of any specific foreign law that limits Defendants' ability to participate in a remote deposition,[4] assuming such a law exists, U.S. courts must weigh their application against the

---

[3] Defendants assert that citizenship issues make oral deposition fraught. This justification clearly cannot apply to two of the Individual Defendants, Marc Baier and Ryan Adams, who are citizens of the United States. *See* ECF 54 at ¶¶ 8, 10.

[4] Defendants raised their concern regarding "national security-related laws" for the first time in their Proposed Discovery Schedule. To the extent Defendants assert any putative foreign law prohibits their participation in a remote deposition, Plaintiff requests leave to respond to Defendants' legal and factual assertions.

PAGE 7 - PLAINTIFF'S MEMORANDUM OF LAW ON PROPOSED DISCOVERY SCHEDULE AND PROPOSED DISCOVERY REQUESTS

importance of the information sought and the nature of the sovereign interests, "not . . . adhere blindly to the directives of such a statute." *Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for S. Dist.*, 482 U.S. 522, 544 & n.29 (1987).  U.S. courts can compel discovery if they determine these factors weigh in favor of discovery.  *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2014 U.S. Dist. LEXIS 151222, *71 (N.D. Cal. 2014) (ordering overseas discovery despite conflicting foreign law since the information sought was "highly significant" and "it was difficult if not impossible to obtain the information through treaty procedures"); *United States v. Buff*, 636 F. Supp. 3d 441, 449-50 (S.D.N.Y. 2022) (ordering overseas discovery where foreign party's resistance is not considered to be in good faith).  Even if a yet-to-be-identified foreign law somehow affects Defendants' ability to testify, that should neither prevent this Court from compelling Defendants to testify, nor prohibit Plaintiff from pursuing all available means of seeking discovery, including through diplomatic channels.

### C. Any Non-Disclosure Agreement(s) Should Not Limit Discovery.

Defendants also noted the existence of non-disclosure agreement(s) that may, in their view, limit certain discovery. While the parties have not been able to fully identify the existence or extent of any such agreement(s), Plaintiff sees no reason why potential confidentiality concerns cannot be addressed with a suitable protective order. Indeed, the fact that Defendants can agree to written depositions demonstrates that such concerns are resolvable.

### III. CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court grant her proposed discovery schedule and proposed discovery requests.

Dated: March 8, 2024                           ___/s Christopher Hart_____

**BOISE MATTHEWS DONEGAN LLP**
Bridget M. Donegan
OSB No. 103753
805 SW Broadway, Suite 1900
Portland, OR 97205
(503) 228-0487
bridget@boisematthews.com

**FOLEY HOAG LLP**
Christopher E. Hart
    MA BBO No. 625031
Anthony D. Mirenda
    MA BBO No. 550587
Andrew Loewenstein
    MA BBO No. 648074
155 Seaport Boulevard
Boston, MA 02210
 (617) 832-1000
chart@foleyhoag.com
adm@foleyhoag.com
aloewenstein@foleyhoag.com

**ELECTRONIC FRONTIER FOUNDATION**
David Greene
    CA Bar No. 160107
Sophia Cope
    CA Bar No. 233428
815 Eddy Street
San Francisco, CA 94109
(415) 436-9333
davidg@eff.org
sophia@eff.org

PAGE 9 - PLAINTIFF'S MEMORANDUM OF LAW ON PROPOSED DISCOVERY SCHEDULE AND PROPOSED DISCOVERY REQUESTS

**CENTER FOR JUSTICE AND ACCOUNTABILITY**
Daniel McLaughlin
    CA Bar No. 315326
Claret Vargas
    MA BBO No. 679565
Carmen Cheung Ka Man
    NY Bar No. 4132882
268 Bush St. #3432
San Francisco, CA 94104
(415) 544-0444
dmclaughlin@cja.org
cvargas@cja.org
ccheung@cja.org

*Attorneys for Plaintiff Loujain Hathloul Alhathloul*