IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **LOUJAIN HATHLOUL ALHATHLOUL,**<br><br>Plaintiff,<br><br>v.<br><br>**DARKMATTER GROUP**, **MARC BAIER**, **RYAN ADAMS**, and **DANIEL GERICKE**,<br><br>Defendants. | Case No. 3:21-cv-01787-IM<br><br>**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR ORAL DEPOSITIONS AND LIMITING THE SCOPE OF PLAINTIFF'S DISCOVERY REQUESTS** |

Bridget M. Donegan, Boise Matthews, L.L.P., 805 SW Broadway, Suite 1900, Portland, OR 97205. Christopher E. Hart, Andrew B. Lowenstein, and Anthony D. Mirenda, Foley Hoag, L.L.P., 155 Seaport Boulevard, Boston, MA 02210. David Greene and Sabrina S. Cope, Electronic Frontier Foundation, 815 Eddy Street, San Francisco, CA 94109. Carmen K. Cheung, Claret Vargas, and Daniel McLaughlin, Center for Justice and Accountability, 278 Bush Street, Suite 3432, San Francisco, CA 94104. Attorneys for Plaintiff Loujain Hathloul Alhathloul.

Nicholas F. Aldrich, Schwabe, Williamson & Wyatt, P.C., 1211 SW 5th Ave., Suite 1900, Portland, OR 97204. Anthony T. Pierce, Caroline L. Wolverton, and James Tysse, Akin Gump Strauss Hauer & Feld, L.L.P., 2001 K. Street, N.W., Washington, DC 20006. Natasha G. Kohne, Akin Gump Strauss Hauer & Feld, L.L.P., 580 California St., Suite 1500, San Francisco, CA 94104. Attorneys for Defendant DarkMatter Group.

Clifford S. Davidson, Snell & Wilmer, L.L.P., 601 SW 2nd Avenue, Suite 2000, Portland, OR 97204. Attorney for Defendants Marc Baier, Ryan Adams, and Daniel Gericke.

PAGE 1 – OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR ORAL DEPOSITIONS AND LIMITING THE SCOPE OF PLAINTIFF'S DISCOVERY REQUESTS

**IMMERGUT, District Judge.**

On February 8, 2024, this Court granted Plaintiff Loujain Alhathloul's Motion for Limited Jurisdictional Discovery, ECF 76, and ordered Plaintiff and Defendants DarkMatter Group, Marc Baier, Ryan Adams, and Daniel Gericke to propose a jurisdictional discovery schedule and plan within fourteen days. *See* Opinion and Order ("Disc. Op."), ECF 80. The Parties, however, were unable to agree on a plan. Accordingly, this Court ordered the Parties to file dueling proposed jurisdictional discovery plans and briefs justifying their plans. ECF 83. After reviewing the Parties' briefing and proposals, this Court ORDERS that all depositions be conducted orally, remotely, and live, but DENIES in part Plaintiff's discovery requests, as they exceed the limits this Court set in its Opinion and Order granting limited jurisdictional discovery, *see* Disc. Op., ECF 80 at 7–9. A list of redlined, approved discovery requests appears in an appendix at the end of this Opinion.

## DISCUSSION

"A district court has wide discretion in controlling discovery." *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 862 (9th Cir. 2014) (citation and internal quotation marks omitted); *see also Jorgensen v. Cassiday*, 320 F.3d 906, 913 (9th Cir. 2003) ("The district court is given broad discretion in supervising the pretrial phase of litigation . . . ." (citation omitted)). Exercising its discretion, this Court will require the Parties to conduct remote depositions live and will cabin the scope of Plaintiff's proposed discovery requests.

**A.   Remote Depositions Will Be Conducted Orally and Live**

Plaintiff requests that she be permitted to "tak[e] the remote deposition of each Individual Defendant and a corporate designee of DarkMatter Group." Plaintiff's Memorandum ("Pl.'s

Br."), ECF 84 at 4–5. Defendants oppose this request, contending that oral depositions will impose an "undue burden" on Defendants because they reside abroad and because Defendants Adams and Gericke have signed a non-disclosure agreement with the Emirati National Electronic Security Authority ("NESA"). Defendants' Response Memorandum ("Defs.' Resp."), ECF 85 at 3–6. Instead, Defendants propose, "[j]urisdictional discovery should be limited to interrogatories and document requests." *Id.* at 6.

This Court agrees with Plaintiff that depositions should be conducted live and orally, albeit remotely, not through written interrogatories. As an initial matter, oral depositions are the norm. By contrast, "[d]epositions by written questions are an alternative to oral depositions" that are "rarely used." 8A Charles Alan Wright et al., Federal Practice & Procedure § 2131 (3d ed. Apr. 2023 update) ("Wright & Miller"). As districts courts across this country have recognized, "a deposition by written questions may be appropriate under 'limited circumstances.'" *Stanek v. St. Charles Comm. Unit Sch. Dist. # 303*, No. 13 C 3106, 2020 WL 1304828, at *5 (N.D. Ill. Mar. 19, 2020) (quoting *Mill-Run Tours, Inc. v. Khashoggi*, 124 F.R.D. 547, 549 (S.D.N.Y. 1989); *see also Fid. Int'l Currency Advisor A Fund, LLC v. United States*, Civil No. 05–40151–FDS, 2007 WL 9412764, at *3 (D. Mass. May 23, 2007). This is because written depositions, among other things, prevent the party seeking discovery from asking follow-up questions, observing the witness, and, notably, from ensuring the integrity of the responses, which may be drafted or edited by attorneys. *See Fid. Int'l*, 2007 WL 9412764, at *3; *see also* 8A Wright & Miller § 2132.

Thus, the burden is on Defendants to provide a "persuasive reason why the presumption of oral depositions should be disregarded." *In re Terrorist Attacks on Sept. 11, 2001*, 03-MD-01570 (GBD) (SN), 2023 WL 4447869, at *13 (S.D.N.Y. July 11, 2023) (citation omitted)

(opinion concerning the scope of jurisdictional discovery). Defendants must also reckon with the fact that "depositions by written questions" are not typically appropriate when "the witness is hostile and the testimony is likely to be controversial," as is the case here. *Stanek*, 2020 WL 1304828, at *5 (quoting *Jones v. Hollenback*, CV F 05 0148 OWW DLB, 2006 WL 8458647, at *4 (E.D. Cal., Feb. 8, 2006)); *see also* Charles Alan Wright, Discovery, 35 F.R.D. 39, 59 (1963).

Defendants have advanced no persuasive reason for deviating from the use of oral depositions. First, Defendants emphasize that the individual Defendants "reside overseas," Defs.' Resp., ECF 85 at 4, but this concern is misplaced. Quoting the Seventh Circuit's decision in *Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*, Defendants assert that oral depositions during jurisdictional discovery would violate the rule that "burdensome, wide-ranging discovery against defendants from a foreign nation is not appropriate at a stage where the district court is trying to determine whether it has any power over the defendants." 230 F.3d 934, 947 (7th Cir. 2000). In the quotation, however, the Seventh Circuit was referring to the fact that the plaintiff had proposed "broad interrogatories and documents requests" most of which "were irrelevant to the issue of specific personal jurisdiction." *Id.*; *see Cooper v. Harris*, 581 U.S. 285, 321 (2017) (explaining that language in an opinion must be read in context and as "arising from and reflecting the evidence offered in [the particular] case"). Here, this Court has already cabined the scope of jurisdictional discovery, and should Plaintiffs attempt to exceed that scope during a deposition, Defendants' counsel can raise objections that this Court will consider in due course. *See Société Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987) (explaining that "[o]bjections to 'abusive' discovery that foreign litigants advance should . . . receive the most careful consideration" but declining to "articulate specific rules to guide this delicate task of adjudication").

Second, Defendants contend that interrogatories are preferable to oral deposition by pointing to the fact that two of the individual Defendants, Ryan Adams and Daniel Gericke, have entered non-disclosure agreements with NESA. Defs.' Resp., ECF 85 at 3, 5; *see also* Declaration of Daniel Gericke, ECF 86; Declaration of Ryan Adams, ECF 87. This Court "cannot discern," however, "how . . . factual information can be protected by [the non-disclosure agreements] when elicited in oral deposition questions, but fully discoverable within the context of a written interrogatory." *U.S. E.E.O.C. v. Caesars Ent., Inc.*, 237 F.R.D. 428, 434 (D. Nev. 2006). Defendants nowhere address this discrepancy. And in any event, while "[o]ral deposition questions of non-lawyer witnesses may pose a slightly greater risk of inadvertent disclosure of privileged or protected information, . . . that risk is adequately addressed by the presence of counsel who may instruct the witness not to answer improperly phrased questions." *Id.* Further, witnesses "can be counseled on the scope" of the confidentiality agreement "in deposition preparation." *Id.* Finally, this Court notes that Defendants contemplate the imposition of a protective order, *see* Defs.' Resp., ECF 85 at 3 n.3, and such an order would also safeguard against the disclosure of privileged and protected information.

In sum, Defendants have not offered a persuasive reason for departing from the presumption in favor of oral depositions during discovery, jurisdictional or otherwise. Accordingly, Plaintiff is permitted to conduct remote, oral depositions with the individual Defendants and a corporate designee of the DarkMatter Group.

**B. Plaintiff's Requests for Production and Interrogatories Are Generally Overbroad**

That said, Plaintiff's proposed jurisdictional discovery requests are inconsistent with this Court's Opinion and Order granting limited jurisdictional discovery. In Plaintiff's view, "[l]imiting discovery to the precise wording of the categories of information in the Order risks

PAGE 5 – OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR ORAL DEPOSITIONS AND LIMITING THE SCOPE OF PLAINTIFF'S DISCOVERY REQUESTS

precluding Plaintiff from obtaining information that could be highly probative to the jurisdictional analysis." Pl.'s Br., ECF 84 at 3–4 n.1. But jurisdictional discovery cannot turn into a "fishing expedition," *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 508 (9th Cir. 2023), especially when, as here, the case raises issues of international comity. *See* Disc. Op., ECF 80 at 8. This Court will therefore limit the scope of Plaintiff's jurisdictional discovery requests, as redlined in the appendix below.

## CONCLUSION

This Court ORDERS the Parties to conduct remote oral depositions and DENIES in part Plaintiff's discovery requests. As shown in the appendix below, this Court LIMITS the scope of Plaintiff's discovery requests to comport with its prior Opinion and Order, ECF 80. The Parties are further ORDERED to file within seven days a jointly proposed jurisdictional discovery order reflecting this Court's conclusions.

**IT IS SO ORDERED.**

DATED this 22nd day of March, 2024.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge

## APPENDIX: REDLINED PROPOSED DISCOVERY REQUESTS

**A. Proposed Requests for Production**

- Request No. 1: The Computer Code utilized by Karma to exfiltrate Alhathloul's data from November 28 to December 2, 2017.

- Request No. 2: The Computer Code utilized by the Relevant Karma System to exfiltrate Alhathloul's data from November 28 to December 2, 2017.

- Request No. 3: All Documents and Communications discussing, describing, analyzing, or otherwise evidencing the Computer Code utilized by Karma to exfiltrate Alhathloul's data from November 28 to December 2, 2017.

- Request No. 4: All Documents and Communications discussing, describing, analyzing, or otherwise evidencing the Computer Code utilized by the Relevant Karma System to exfiltrate Alhathloul's data from November 28 to December 2, 2017.

- Request No. 5: The System Architecture of the Relevant Karma System used to exfiltrate Alhathloul's data from November 28 to December 2, 2017.

- Request No. 6: All Documents and Communications discussing, describing, analyzing, or otherwise evidencing the System Architecture of the Relevant Karma System used to exfiltrate Alhathloul's data from November 28 to December 2, 2017.

- Request No. 7: Data logs showing, and all Documents or Communications discussing, describing, analyzing, or otherwise evidencing, any and all commands sent from Karma to Alhathloul from November 28 to December 2, 2017.

- Request No. 8: Data logs showing, and all Documents or Communications discussing, describing, analyzing, or otherwise evidencing, any and all commands sent from Karma to Alhathloul's iPhone ~~during the Relevant Period~~ from November 28 to December 2, 2017.

- Request No. 9: All Documents and Communications discussing, describing, analyzing, or otherwise evidencing Target Orders and Alhathloul from November 28 to December 2, 2017.

- Request No. 10: All Documents and Communications discussing, describing, analyzing, or otherwise evidencing how the Relevant Karma System sent commands to, or communicated with, servers or devices located in the United States during the period of November 28 to December 2, 2017.

- Request No. 11: All Documents and Communications discussing, describing, analyzing, or otherwise evidencing Alhathloul's location or whereabouts from November 28 to December 2, 2017.

PAGE 7 – OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR ORAL DEPOSITIONS AND LIMITING THE SCOPE OF PLAINTIFF'S DISCOVERY REQUESTS

- Request No. 12: All Documents and Communications discussing, describing, analyzing, or otherwise evidencing Alhathloul's social media posts from November 28 to December 2, 2017.

- Request No. 13: All Documents and Communications discussing, describing, analyzing, or otherwise evidencing Target Research of Alhathloul from November 28 to December 2, 2017.

- Request No. 14: All Documents and Communications discussing, describing, analyzing, or otherwise evidencing the Relevant Karma System's ability to exfiltrate Alhathloul's location data from November 28 to December 2, 2017.

- Request No. 15: Documents sufficient to show the identity of the U.S. company (or companies) from which Defendants procured anonymization services and/or proxy servers with respect to the exfiltration of Alhathloul's data from November 28 to December 2, 2017.

- Request No. 16: Documents sufficient to show the identity of the U.S. company (or companies) from which Defendants procured anonymization services and/or proxy servers utilized by the Relevant Karma System with respect to the exfiltration of Alhathloul's data during the period of November 28 to December 2, 2017.

- Request No. 17: Documents sufficient to show the contract or agreement into which Defendants entered with the U.S. company (or companies) from which Defendants procured anonymization services and/or proxy servers utilized by, or used in connection with, the exfiltration of Alhathloul's data during the period of November 28 to December 2, 2017 ~~the Relevant Karma System~~.

- Request No. 18: All Communications between You and the U.S. company (or companies) that provided the anonymization services and/or proxy servers utilized by, or used in connection with, the exfiltration of Alhathloul's data during the period of November 28 to December 2, 2017 ~~the Relevant Karma System~~.

- Request No. 19: All Documents and Communications discussing, describing, analyzing, or otherwise evidencing the use of anonymization services and/or proxy servers to prevent detection of, or mask the true origin of transmissions by, Karma with respect to the exfiltration of Alhathloul's data during the period of November 28 to December 2, 2017.

- Request No. 20: With respect to the contract or agreement identified in Request No. 17, all Documents and Communications discussing, describing, analyzing, or otherwise evidencing the role and purpose of these services and/or proxy servers, including how these anonymization services and/or proxy servers interacted with other features of the Relevant Karma System with respect to the exfiltration of Alhathloul's data during the period of November 28 to December 2, 2017.

PAGE 8 – OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR ORAL DEPOSITIONS AND LIMITING THE SCOPE OF PLAINTIFF'S DISCOVERY REQUESTS

- Request No. 21: With respect to the U.S. company (or companies) identified in Request No. 15 or Request No. 16, all Documents and Communications discussing, describing, analyzing, or otherwise evidencing the company and services it provided with respect to the exfiltration of Alhathloul's data during November 28 to December 2, 2017.

**B. Proposed Interrogatories**

- Interrogatory No. 1: Describe the pathway(s) of data between the Relevant Karma System and a Target's Alhathloul's Device from November 28 to December 2, 2017, including all data and commands sent to, from, or through the Relevant Karma System and a Target's Alhathloul's Device, in order to access or exfiltrate data from November 28 to December 2, 2017.

- Interrogatory No. 2: Explain how the Relevant Karma System communicated with malware implanted on a Target's Alhathloul's Device, including each command sent to, from, or through the Target's Device, from November 28 to December 2, 2017.

- Interrogatory No. 3: Identify the U.S. company that provided "anonymization services and other proxy servers to prevent detection and mask the true origin of intrusions," as identified in Paragraph 56 of the DPA Facts, for the Relevant Karma System used to exfiltrate Alhathloul's data from November 28 to December 2, 2017.

- Interrogatory No. 4: With respect to the U.S. company You identified in Interrogatory No. 3, identify and describe the exact services Defendants procured, including the contract or agreement into which Defendants entered with respect to the Relevant Karma System used to exfiltrate Alhathloul's data from November 28 to December 2, 2017.

- Interrogatory No. 5: With respect to the U.S. company You identified in Interrogatory No. 3, explain how their anonymization services and other proxy servers helped prevent detection and mask the true origin of intrusions of the Relevant Karma System used to exfiltrate Alhathloul's data from November 28 to December 2, 2017, such as whether these anonymization services and other proxy servers allowed for "spoofing" of transmission location data from the Relevant Karma System.

- Interrogatory No. 6: With respect to the U.S. company You identified in Interrogatory No. 3, explain why Defendants procured the anonymization services and other proxy servers from this U.S. company and these particular anonymization services and proxy servers.

- Interrogatory No. 7: Explain how the anonymization services and proxy servers utilized by the Relevant Karma System used to exfiltrate Alhathloul's data from November 28 to December 2, 2017 interacted with other technical features of the Relevant Karma System, including a description of all data and commands sent to, from, or through the anonymization services and proxy servers from November 28 to December 2, 2017.

PAGE 9 – OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR ORAL DEPOSITIONS AND LIMITING THE SCOPE OF PLAINTIFF'S DISCOVERY REQUESTS

- Interrogatory No. 8: Explain if, and to what extent, the Relevant Karma System used to exfiltrate Alhathloul's data from November 28 to December 2, 2017 gathered location data from ~~a Target's~~ Alhathloul's Device or information sufficient to infer the location of ~~a Target's~~ Alhathloul's Device.

- Interrogatory No. 9: Explain any and all commands sent, ~~or~~ and measures taken, technological or otherwise, to ensure that the Relevant Karma System used to exfiltrate Alhathloul's data from November 28 to December 2, 2017 could exfiltrate data from an iPhone located in the United States, including the reinstallation of the Exploit when a target turned off their phone or entered a new country.

- Interrogatory No. 10: Identify all individuals known to You that have personal knowledge of facts pertaining to the Interrogatories listed herein or the categories of discovery identified in the Court's Order Granting Plaintiff's Motion for Limited Jurisdictional Discovery.